Nov. Term,
1849.

FRENCH
v.
CRANE.

(1) See *ante*, p. 446.

---

## FRENCH v. CRANE and Another.

Assumpsit on a written contract to deliver a boat laden with corn on its arrival at *New Orleans*. The boat sunk before it left the *Wabash* river, and the corn was destroyed. The defendant introduced oral testimony to show that the boat was delivered to the plaintiff at the time the contract was made. The Court instructed the jury that the only question was, whether the transfer or delivery of the property was made at the time the contract was completed. *Held*, that if it was admissible to prove by oral testimony such a delivery, the question was one of fact for the jury, and the defendant could not complain of the instruction.

*Friday,*
*November 30.*

APPEAL from the *Sullivan* Circuit Court.

SMITH, J.—Assumpsit by *Thomas B. Cranè* and *Abiather Crane*, against *Henry French*. The declaration contained the money counts, and also a special count upon an agreement by the defendant, to sell the plaintiffs, a flatboat loaded with corn, for 707 dollars and 40 cents. The plaintiffs averred that they paid the defendant 200 dollars in advance, according to the terms of the contract, and that the defendant was to deliver the boat and corn to the plaintiffs, or their consignee, at *New Orleans*, but failed to do so. The defendant pleaded the general issue, and also a plea of set-off for the price and value of a boat and three thousand bushels of corn. Upon the trial, the jury found a verdict for the plaintiffs, for 215 dollars damages, and a motion for a new trial having been overruled, judgment was rendered accordingly.

All the evidence, and the instructions given by the Court, were set out in a bill of exceptions.

The plaintiffs proved by *P. M. Doughty*, a parol contract between the plaintiffs and the defendant, which was finally reduced to writing, signed by the witness as agent of the plaintiffs, and left in the possession of the defendant. This contract was as follows:

Nov. Term, 1849.

FRENCH
v.
CRANE.

"Articles of agreement made and entered into this 29th day of *May*, 1846, between *Henry French*, of *Sullivan* county, and state of *Indiana*, of the one part, and *T. B. & A. Crane*, of *Putnam* county and state of *Indiana*, of the other part, witnesseth: That the said *French* sells to the said *Cranes*, his flat-boat, seventy-five feet long by eighteen wide, loaded with good corn, for the sum of 707 dollars and 40 cents, to be paid in the following manner: Said *Cranes* to pay said *French* 200 dollars in advance, the receipt whereof is hereby acknowledged, and the balance said *Cranes* pay *French* on the arrival or delivery of the boat in *New Orleans;* said boat and load shall be insured at *Cranes'* expense, and in the name of the captain, who shall have full control until it arrives at *New Orleans*, when it shall be delivered to said *Cranes* or their consignees, and at the delivery, said *Cranes* shall pay to the captain or *French* the residue, and on their failure so to do, they forfeit the 200 dollars already paid. The whole expense of running the boat and load shall be paid by the said *Cranes*, and the whole shall be considered *French's* until the *Cranes* pay or tender the said *French*, or agent, the balance of the purchase-money. The said *French* shall be responsible for the delivery of the boat and load, by the captain, at *New Orleans*, to said *Cranes* or their consignees, and in case of the loss of the boat by staving, or otherwise, the insurance money shall be paid to said *Cranes*, except so much as will pay the balance of the purchase-money, which shall be retained by the captain for said *French*.

"*T. B. & A. Crane*, by *P. M. Doughty*."

On the same day, after the above contract was made, a receipt for the corn was given to the defendant, as follows:

"*Merom, May* 29th, 1846. Received of *Henry French*

two thousand seven hundred and eighty-seven bushels of corn.　　*T. B. & A. Crane*, by *P. M. Doughty*."

The same witness stated, that, at the time the above contract and receipt were signed, he paid, as agent of the plaintiffs, 200 dollars to the defendant; that the loading of the boat had been completed on the 28th of *May*, and on the same day, the boat had been moved by the witness and two boat hands in the employ of *French*, from the landing of *French* to another landing, *Bratton's*, about one mile below, and on the *Illinois* side of the *Wabash* river.

There was proof that, on the 27th of *May*, *French* had objected to the boat being moved. It did not appear that he either objected or assented to its removal on the 28th, but on the 29th, as was stated by one of the witnesses, there was much difficulty, on his part, because the boat had been moved. He insisted he would not be answerable for the boat, unless insured at the landing, but when *Doughty* signed the contract and receipt he seemed satisfied. The usual mode of insurance upon the *Wabash*, was to insure from the time the boat started on her trip. When *French*, before the contract was signed, insisted that the boat and cargo should be insured at the landing, *Doughty* refused, on the ground that it would cost double the insurance.

It was proved, by one *Bratton*, that he was employed as steersman of the boat by *French*—that the boat was good—that he recommended moving it—and that his landing was better and safer than that of *French*.

One *Camplain* stated, that he received the boat from *Doughty* at *Bratton's* landing; that *French* recommended him, and *Doughty* hired him to take charge of it; that he was told, if any accident happened the boat to write to *Doughty* at *Terre Haute*, or to the plaintiffs at *Greencastle*, but he did not recollect any reference to the defendant.

*Doughty* expended 94 dollars, including his own labor, in fitting out the boat, which had been partially sunk at *French's* landing before the loading was completed. While

OF THE STATE OF INDIANA.  497

at *Bratton's* landing, *Camplain* was in charge of the boat for some time, and then left it in the care of one *Hayworth*. Finally, the boat sunk and the corn was lost.

The following letter was proved and read to the jury:

"*Gill's Prairie, Sullivan* co., *Ind., June* 25th, 1846.

"Dear sir:—I take this opportunity to let you know that the man you left the boat in care of has moved to *Sullivan*, twelve miles from the boat, and he has left the boat in care of *Sylvester Hayworth*, and on *Sunday* night, the 7th of this month, he came and told me the boat was about to sink. I got hands and went and pumped her out dry; there were twelve or thirteen inches of water in her, consequently, it would be four inches deep on the corn. Sir, *Sylvester Hayworth* came to-day and told me the boat leaks very bad, and he cannot take care of the boat any longer, and the boat will sink if something is not done with it immediately, so you had better come in haste and see to it. Please write if the boat is insured or not. Sir, the boat is likely to be lost, come immediately, and the corn can be taken out and put in pens on the bank of the river.

"Yours, with respect,          *Henry French.*

"To Mr. *Doughty*, or Mr. *Crane*, of *Greencastle*."

The above being all the evidence that was material, the defendant below requested the Court to instruct the jury as follows:

"That from the time of the execution of the contract, and receipt for the corn by *Doughty*, for the plaintiffs, and the payment of the 200 dollars to *French*, the property in the said boat and corn was vested in the plaintiffs, the *Cranes*, and the said boat and corn was entirely at their risk.

"That the provision of the contract, 'that the whole shall be considered *French's* until payment by the *Cranes*,' has not, upon a reasonable construction of the whole instrument, any reference to the right of property, but only to the reservation of a lien for the balance of the price."

The Court refused to give these instructions, but gave the following:

VOL. 1.—63

Nov. Term,
1849.

FRENCH
v.
CRANE.

"The question is, was there a transfer and delivery of the property—the boat and corn—by *French* to the plaintiffs at the time the written contract was completed between *Doughty*, as the agent of the plaintiffs, and the defendant? If so, the loss was the plaintiffs', and the defendant is entitled to recover of the plaintiffs the balance unpaid on the contract. But if no transfer of the property passed from *French* to the plaintiffs, at the time the contract was completed, if *Frènch* was to retain possession, and had the right of property in the boat and corn until the arrival of the same in *New Orleans*, and the payment by the plaintiffs of the balance due, or if any act was to be done by *Frènch* subsequently to the contract, which act was necessary to pass the title in the same to the plaintiffs, there was no transfer of the right of property in the boat and corn to the plaintiffs till that act was done, and the plaintiffs are entitled to recover of the defendant, the boat and corn being lost while in his possession, the 200 dollars and expenses and interest."

The defendant, who is now the plaintiff in error, contends that the Court should have given the instructions asked for by him, and that those that were given were erroneous.

Looking to the written contract alone, it would be clear enough that the intention of the parties was that *French* was not to part with his ownership of the boat and corn until the balance of the purchase-money should be paid by the *Cranes*, on the arrival of the boat at *New Orleans*. It is expressly provided that the boat and its lading should then be delivered, but that the property should be considered as belonging to *French* until the *Cranes* should pay or tender *French*, or his agent, such balance of purchase-money; and if they failed to do so they should forfeit the sum paid in advance.

But it is urged by the plaintiff in error, that for the purpose of explaining the intention of the parties, and properly construing the written contract, it is necessary to look to the facts proved by the oral testimony; and that, taking all the provisions of the written contract in

Nov. Term,
1849.

FRENCH
v.
CRANE.

connection with the verbal proof, and especially in connection with the fact that the boat and corn were in the actual possession of the *Cranes* at the time the contract was signed, we should come to the conclusion that the right of property passed to the plaintiffs below at the time of the execution of the contract, subject to a lien in *French* for the balance due; and that to effectuate this lien the captain was constituted the agent of both parties, with the guaranty of *French* for his integrity. The position thus assumed, stated with less ingenuity, perhaps, but in plainer terms, seems to be this: that notwithstanding the provision in the written contract, that the property should be delivered at a future time and at a distant place, it is established by the oral proof that it was actually delivered to the *Cranes*, and such delivery was accepted by them, at or before the time when the written contract was executed, and that, consequently, though otherwise expressed in the written instrument, it was the intention of the parties that the property should be considered as belonging to the *Cranes* from that time. We shall not stop to inquire whether such proof is in contradiction of the written contract, or merely explanatory, the plaintiff in error having had the benefit of it. Assuming that it was competent for him to prove, under the circumstances of this case, that there was such a delivery and acceptance, and it is only upon that ground that he can plausibly contend that the ownership of the property was changed, it was a question of fact, and one which cannot be said to have been so clearly established, that the Circuit Court should have given the instructions requested by him, or that this Court should reverse the judgment upon the weight of the evidence. A part of the instruction given is so worded that it might be construed to mean that the jury were to examine whether such a delivery did, in point of law, operate to change the ownership of the property, which, so far was improper, as the Court should have left the mere question of fact to the jury; but we think the jury must have understood from the whole tenor of the instruction, that it was intended to inform them that the

Nov. Term,
1849.

Tuley
v.
The State.

case turned upon the question whether there had been such a delivery or not, and as the plaintiff in error has no right to complain of this, we can perceive no reason for reversing the judgment.

*Per Curiam.*—The judgment is affirmed.

*S. Judah,* for the appellant.